[Civ. No. 6661.  Fourth Dist.  May 3, 1962.]

LOUIS L. BARD et al., Plaintiffs and Respondents, v. AL ROSE et al., Defendants and Appellants.

Ruskin & Montgomery, Saul Ruskin and Charles C. Montgomery, Jr., for Defendants and Appellants.

Monroe R. Rubin and Thompson & Colegate for Plaintiffs and Respondents.

SHEPARD, J.—This is an appeal by answering defendants, hereinafter called defendants, from a judgment declaring certain tract building and use restrictions unenforceable as to plaintiffs' lots.

## Facts

While there was some conflict in expert opinion, the facts are without substantial conflict. In 1923 the ''Peveler'' tract at Palm Springs, California, containing 12 building lots, each lot being 137½ feet by 100 feet in size, was subdivided through map recordation. The tract is bordered on the east by Avenida de Los Palos Verdes, on the north by Tachevah Drive and on the west by Indian Avenue. A north and south road, Avenida de Los Olivos, bisects the tract, Block A being on the east and Block B being on the west. The original restrictions allowed only single family dwellings on each lot. In 1932 all of the then owners of the tract signed and recorded a modification of the restrictions so as to permit the erection and use of duplex units on lots 5 and 6 in Block B and an apartment building on lot 4 in Block B. In the same document was inserted a provision for committee approval of architectural design of any building erected during the ensuing 18 years.

In 1923 Palm Springs was an unincorporated desert village of 200 or 300 residents. The only surfaced street was Palm Canyon Drive, a county highway two blocks west of the property subject to this action. Since that time Palm Springs has become one of the most popular winter resort centers of the United States, with consequent municipal incorporation, paved streets, hundreds of apartments, stores, restaurants, amusement centers, hotels, medical and other professional buildings and offices, hospitals, industries and smaller suburban supporting centers in the surrounding areas. Palm Canyon Drive and Indian Avenue for a mile or more north and two miles or more south of the plaintiffs lots are generally devoted to some type of business enterprise. Tachevah Drive is one of the principal east-west traffic arteries of the city. Immediately facing plaintiffs' lots on the north side of Tachevah Drive is the service area of El Mirador Hotel, which hotel occupies an area of several blocks and provides several hundred family dwelling units. Also on Tachevah Drive east of El Mirador is a large hospital. On lots 5 and 6 of Block B of the tract are the El Prado and the Desert Villa apartment motels of 10 to 15-unit size. Within a radius of 1,000 feet of the subject property northeast, north, west and south are located dozens of other commercial and professional buildings and uses. All of the lots on the north and west side of the tract, including the subject lots, are zoned by the City of Palm Springs for R-2 or multiple-dwelling use, which is the use to which plaintiffs desire to put their lots. Experts testified that

the lots are not suitable for single-family dwelling use and that the present highest and best use is for multiple-dwelling purposes. All except the owners of two parcels of the tract have executed and caused to be recorded renunciations of the restrictions. All property owners in the tract except those who filed prior restriction waivers and except appellant herein, were made defendants, were served with process and have defaulted. The owner of the reversionary interest has quitclaimed all interest in reversion. All lienholders shown by the record before us have filed renunciations of the restriction. The only single-family dwellings remaining in the tract are on the most southerly lots and face on Avenida de Los Olivos or Avenida de Los Palos Verdes. There are none on either Indian Avenue or Tachevah Drive.

The trial court found in accordance with the foregoing, concluded that by reason of the changed conditions the restrictions are no longer enforceable and entered judgment for plaintiff. Defendants appeal.

## CHANGE OF USE

Defendants contend that the evidence is insufficient to support the findings and the judgment and that the findings are insufficient to support the judgment. Defendants make the statement that the sole question is, have the plaintiffs shown a change in uses to which the property in the neighborhood is put, so that the property of the plaintiffs is unsuitable for the purpose to which it is now restricted and that to enforce said restrictions would work oppression and not equity. Assuming defendants' statement to be a fair outline of the basic question, we think the trial court was fully entitled on the evidence adduced to so find, that in essential substance it did so find, and that the findings support the judgment.

First, it must be remembered that, as was said in *Brewer* v. *Simpson*, 53 Cal.2d 567, 583 [1-2] [349 P.2d 289], "'When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact,' and 'When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court.' [Citation.]"

And on page 584 [6],

"... '[H]owever lame, however inconclusive, any number of the findings may be, if in any case there be one

clear, sustained and sufficient finding upon which the judgment may rest, every presumption being in favor of the judgment, it will be here concluded that the court did rest its judgment upon that finding, or those findings, and the others may and will be disregarded.' [Citation.]''

■ On conflict of expert opinion, the trial court resolved the conflict in favor of plaintiff. The trial court's decision will, under such circumstances, not be disturbed on appeal. (*Rice* v. *Heggy,* 158 Cal.App.2d 89, 91 [1] [322 P.2d 53].)

[4] The proof of the development of the Tachevah Drive as a principal east-west traffic arterial with consequent increase of noise and traffic, the testimony of experts that the lots in question are not now suitable for single-family dwelling, the release of restrictions by all but two of the lot owners of the tract, the quitclaim of the reversionary owner, the zoning of the lots by the City of Palm Springs for multiple-unit dwellings, the near approach on the northeast, north, west and south of all types of business structures and uses, presents a total picture of change that amply justified the trial court's findings and judgment. (*Key* v. *McCabe,* 54 Cal.2d 736 [356 P.2d 169].)

## Zoning

Defendants complain that the trial court committed prejudicial error in permitting evidence of zoning change. While change of zoning by the city certainly is not decisive, it has been recognized in many cases as evidence. (*Key* v. *McCabe, supra,* 738 [1]; *Rice* v. *Heggy, supra,* 92 [2]; *Wolff* v. *Fallon,* 44 Cal.2d 695, 697 [1] [283 P.2d 802]; *Strong* v. *Hancock,* 201 Cal. 530, 552 [6] [258 P. 60].) ■ As was suggested in the *Strong* case, referring to zoning changes, ''It may be that the adoption of such ordinances by the municipality affecting property subjected to residential restrictions would shed some light upon the question as to whether, in the course of civic growth, changed conditions had arisen in the neighborhood of such property which would render the application of such zoning provisions advisable and hence render the admission in evidence of such ordinances proper in a litigation between strictly private parties involving their contractual rights and obligations.''

We think it was not error to receive such evidence.

## Change Since 1932

Defendants contend there is no change shown by the evidence since 1932. With this we cannot agree. The testimony

of Realtor Gannon shows that since his arrival in 1934 Tachevah Drive and Indian Avenue as well as other streets have been paved, that most of the area shown by the evidence to be now almost solidly built up to multiple dwelling and commercial use, was in 1934 just vacant land, that Tachevah Drive, then a mere dirt road leading to an old stable, has since become a main paved, east-west traffic arterial; the Desert Hospital just across Tachevah Drive and east of plaintiffs' lots has been constructed; the Desert Villa, a 12-unit apartment hotel, was constructed on Lot 5 of Block B of the tract in 1948; on Lot 6 of Block B, which originally contained a home, El Prado court was built, with 10 to 15 units. The record does not show any effort to enforce restrictions against the Desert Villa or El Prado. Other evidence was similar. The zoning change took place about 1946. The record does not support the contention that there was no change after 1932.

Other contentions on admission of evidence are raised by defendants without any attempt to show prejudice, without citation of authority and without argument. In them we are unable to discover error or prejudice if there was error.

In view of the conclusions we have reached, discussion of points raised by plaintiffs is unnecessary.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.