Filed 5/5/21  Lobenstein v. Khodayari CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DREW LOBENSTEIN et al., | B296769 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. LC106634) |
| v. | |
| MOHAMMAD KHODAYARI et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Virginia Keeny, Judge.  Affirmed.

Mohammad Khodayari and Bahman Khodayari, in pro. per., for Defendants and Appellants.

Rosen and Loeb and Alan L. Rosen for Plaintiffs and Respondents.

_____

Plaintiffs and respondents, Drew Lobenstein, Primitivo L. Valle, Elvia Valle, Russell O'Hearn, Christopher Becker, Frances L. Davey, Nava Skolnik and Ilan Skolnik (Respondents) brought a civil action seeking a prescriptive easement against the defendants and appellants, Mohammad Khodayari and Bahman A. Khodayari (Appellants).[1]  The dispute centered on a decades long use of an alley that, in 2016, was partially blocked by the Appellants who extended their back fence making ingress/egress by automobiles nearly impossible.  After a two-day bench trial, the trial court found a prescriptive easement in Respondents' favor and ordered the Appellants to remove the fence within 30 days.  The trial court's judgment was entered on February 29, 2019.  Thereafter, the Appellants filed a notice of appeal and sought a stay on the trial court's fence destruction order which we granted pending the outcome of this appeal.[2]

Appellants raise three contentions:  (1) Respondents failed to prove the element of hostile use of the property for prescriptive easement; (2) the trial court's judgment created an inappropriate exclusive easement/adverse possession; and (3) the trial court in deciding the case erred by using the preponderance of the evidence instead of the clear and convincing standard.  We affirm the judgment.

---

[1]     As in this appeal, the Appellants were self-represented for the court trial.

[2]     On May 28, 2019, we granted in part a petition for a writ of supersedeas staying the trial court's fence destruction order pending disposition of the appeal.

2

## FACTS

Appellants are brothers. In 2004, one of the Appellants, Bahman Khodayari, purchased 19106 Cantara Street, Reseda, California 91335. This Property is located in a suburban residential neighborhood subdivided into parcels with a 14 feet wide alley running along the back of the lots. The Appellants' property is located on the corner of Cantara Street and Vanalden Avenue at one of the mouths of the alley. The residents on Cantara Street have used the alley since the 1950's. According to trial testimony, there are 38 properties that use this alley for ingress and egress from their lots. The alley is accessed through Vanalden Avenue on one end, and Tampa Avenue on the other. The alley is a private road that is 14 feet wide.

In 2016, one of the Appellants, Bahman Khodayari, extended his back fence to the limit of his property line decreasing the alley by seven feet because of alleged theft, trespass, vandalism, garbage dumping, loitering and graffiti on his property. Before he extended his back fence, residents were able to enter the alley on either end (Tampa or Vanalden) and drive through to the other. The decrease in the width of the alley on Vanalden, however, meant automobiles could no longer drive through the alley – they would now have to enter on Tampa Avenue and back up to exit. Many commercial delivery services refuse to enter the alley for this reason.

After a two-day court trial, the court ruled as follows: "The court finds that the use of the alleyway, including that portion that falls within the Defendant's property, to have been hostile to the true owner in that they were not acknowledging that the owner had the right to exclude them. It was done in an adverse manner in that they were claiming, each one of them, that they

3

had the right to use that alleyway pursuant to prior agreement among all homeowners or based on prior usage within the neighborhood. And that was a claim of right that each one of them asserted. And that was contrary and adverse to the defendant's claim of right to the property. [¶] And, further, the court finds that their use of this driveway was continuous and uninterrupted for five years prior to the erection of the sign."

## DISCUSSION

### I. Proof of the Element of Hostile Use for the Prescriptive Easement

Appellants contend the Respondents failed to prove the element of hostile use of the property on two bases: a) "the original homeowners had a verbal agreement as a neighbor accommodation which permitted access to 7 [feet] of their respective property lines for access to the [a]lley," and, b) the Appellants posted a sign establishing a permissive use. We disagree.

### A. Legal Principles

"To establish the elements of a prescriptive easement, the claimant must prove use of the property, for the statutory period of five years, which use has been (1) open and notorious; (2) continuous and uninterrupted; (3) hostile to the true owner; and (4) under claim of right." (*Mehdizadeh v. Mincer* (1996) 46 Cal.App.4th 1296, 1305.)

The Appellants contend the element of hostile use of the property was not established. As the Respondents point out, this challenges the sufficiency of the evidence supporting the trial court's decision as a trier of fact in a court trial on the element of hostile use. "Whether the use is hostile or is merely a matter of neighborly accommodation . . . is a question of fact to be

4

determined in light of the surrounding circumstances and the relationship between the parties. [Citations.]" (*Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 572.)

"In reviewing the sufficiency of the evidence, our task begins and ends with a determination whether any substantial evidence exists, contradicted or uncontradicted, which will support the trier of fact's conclusion. [Citation.]" (*Hellman v. La Cumbre Golf & Country Club* (1992) 6 Cal.App.4th 1224, 1229.) "[A] reviewing court will not find unsupported the trial court's findings merely because it might reasonably draw different inferences from those the trial court reasonably drew unless it clearly appears that under no hypothesis is there substantial evidence to support the trier of fact's finding. [Citation.] Questions of credibility and resolution of conflicting evidence are for the trier of fact. [Citation.]" (*Ibid.*)

## B. The Agreement

Appellants claim the Respondents failed to establish that their use of the alley was hostile and adverse because "[t]he [a]lley was created by an oral agreement amongst the original homeowners, which was ratified by their conduct of allocating 7 [feet] of their property to create the [a]lley."

During cross-examination of Robert Alan Scott called by the Respondents, appellant Bahman Khodayari asked whether Scott was upset with him. Scott responded:

"I am upset that you, without asking anyone else's permission, chose to violate an agreement that had been in place for many decades."

Scott further testified that when he purchased his property, his next-door neighbor had explained that in 1952, everyone had agreed to give away seven feet of their property to create an alley.

5

Similar testimony came from another one of Respondents' witnesses, Wyllyam Davey. During cross-examination by appellant Bahman Khodayari, Davey testified, "In 1950 my mom and dad granted - - the whole neighborhood let them do that. So [the alley's] been open since 1950. Okay."

Appellants cite *Windsor Pacific LLC v. Samwood Co., Inc.* (2013) 213 Cal.App.4th 263 for the rule that, "[u]se with the owner's permission . . . is not adverse to the owner. [Citations.]" (*Id.* at p. 271.) *Windsor* goes on the explain, "[t]o be adverse to the owner a claimant's use must give rise to a cause of action by the owner against the claimant. [Citations.] This ensures that a prescriptive easement can arise only if the owner had an opportunity to protect his or her rights by taking legal action to prevent the wrongful use, yet failed to do so. [Citations.]" (*Ibid.*) It stands to reason, if the owner of a property has given permission to the claimant to use the property, the owner would have no reason to protect his property as he is the one who permitted the use. The relationship is clearly not hostile.

Such is not true here. First, Appellants, if they wanted the trial court to seriously consider this issue, could have developed this defensive theory of "permissive" use in greater detail. As it was, the testimony on this supposed oral agreement was thin, secondhand, and unclear. The trial court was not provided with any definite information about who may have originally agreed, what the terms of the agreement may have been, or whether there actually ever was an agreement. Other than to establish that Respondents believed they had a right to use the alley, very little about the oral agreement was actually established. It was up to the Appellants, if they chose to rely upon it at trial, to

6

develop it. They failed to do so. The trial court can only base its decision on the facts presented.

Furthermore, there is no evidence in the record that the Appellants even knew of the existence of the supposed oral agreement before the trial. The purpose of the rule is to provide owners with an opportunity to take legal action against encroachers to eject them. The rationale for the rule simply does not apply to the facts of this case. The Appellants failed to provide the trial court with sufficient facts for it to rule in their favor.

Indeed, the trial court saw this testimony as supportive of another element – that the Respondents believed they had a claim of right to use the alley.

## C.    Posted Sign

Appellants contend when they purchased the property in 2004, a sign was posted on the back fence which read: "A Private Lane [*sic*], For Residents ONLY, By Permission Of Owner Of This Property, No Trespassing, No Dumping, No Parking, No Loitering." Appellants claim during Scott's testimony, he admitted to seeing this sign. The question and answer went as follows:

> "[Counsel for Plaintiffs:] Okay. You see that sign?
> "[Mr. Scott:] Uh-huh.
> "[Counsel for Plaintiffs:] Have you ever seen that sign before other than today?
> "[Mr. Scott:] Yeah.
> "[Counsel for Plaintiffs:] Where did you see it?
> "[Mr. Scott:] I've seen it at the end on Tampa.
> "[Counsel for Plaintiffs:] That same exact sign?

"[Mr. Scott:] No. Not the same exact sign. But, it's a private lane for residents only.

"[Counsel for Plaintiffs:] My question is have you ever seen that sign?

"[Mr. Scott:] No."

Appellants cite *Villanueva v. City of Colton* (2008) 160 Cal.App.4th 1188 and invoke the doctrine of judicial estoppel. "Judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, prevents a party from 'asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding. The doctrine serves a clear purpose: to protect the integrity of the judicial process.'" (7 Witkin, Cal. Procedure (5th ed. 2020) Judgments, § 339.) This doctrine is often cited when a party, seeking to avoid an adverse ruling by the court, claims as true facts inconsistent with a position taken earlier in the same or related proceedings. The doctrine is aimed at curtailing legal gamesmanship.

Scott's testimony does not fit within the reach of this rule. Instead, when a witness makes a statement that may be inconsistent with a prior statement, it is the trier of fact's duty to ascertain credibility. (*People v. Zapien* (1993) 4 Cal.4th 929, 956.) Here, it is difficult to say Scott's testimony contained any inconsistency at all. If there was any, it was the trial court's duty as the trier of fact to resolve it.

On this contention, Appellants also ask us to consider a letter from the previous owner, Greg Reed. During the presentation of evidence, the trial court excluded this letter based on lack of foundation. "It is an elementary rule of appellate procedure that, when reviewing the correctness of a trial court's

8

judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered. [Citation.]" (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813.) By this rule, we are prevented from considering Greg Reed's letter.

On this same topic, Appellants also contend the trial court abused its discretion by denying their mid-trial continuance to call Greg Reed. "The decision to grant or deny a continuance is committed to the sound discretion of the trial court. [Citation.] The trial court's exercise of that discretion will be upheld if it is based on a reasoned judgment and complies with legal principles and policies appropriate to the case before the court. [Citation.] A reviewing court may not disturb the exercise of discretion by a trial court in the absence of a clear abuse thereof appearing in the record." (*Forthmann v. Boyer* (2002) 97 Cal.App.4th 977, 984–985.) California Rules of Court, rule 3.1332(c), provides in pertinent part, "Although continuances of trials are disfavored, each request for a continuance must be considered on its own merits. The court may grant a continuance only on an affirmative showing of good cause requiring the continuance."

After appellant Bahman Khodayari finished testifying in his own defense, he was asked by the trial court if he had any further witnesses. He replied, "At this point, I cannot reach them. But if the Court is willing to continue, I will call to the previous owner from 2004. But that person has to be - - come another day. Not today." The trial court denied the request stating, "The court is going to deny the request to continue the trial. Any witnesses for either side should have been subpoenaed to court for this date. Because defendant has already indicated

9

he did not subpoena him, apparently this gentleman to trial, then I see no basis for continuing the trial."

Respondents filed their complaint on December 22, 2017. The trial occurred on January 29 and 30, 2019. Appellants had over a year to locate and subpoena their witnesses, including witness Reed. At the time of Appellants' request, all the testimony had concluded. Appellants' request was unspecific on due diligence and on the potential success of obtaining Reed's appearance. Based on these factors, the trial court's denial was within its sound discretion.

On the issue of the posted sign, the trial court ultimately ruled, "The court did not find credible [Appellants'] testimony, and this will be both [Appellants'] testimony, that there was a sign placed on the back fence - - this is Exhibit 3 - - as all of the [Respondents] and Mr. Scott denied ever seeing this alleged sign. There was no photograph anywhere showing that it actually had been placed in a visible place prior to the fence being erected in 2016."

The trial court found the main evidence provided through the testimony of the Appellants not credible. Factual disputes are resolved by the trier of fact, here, the trial court. "It is elementary that an appellate court does not weigh or resolve conflicts in the evidence nor does it judge the credibility of witnesses." (*Halagan v. Ohanesian* (1967) 257 Cal.App.2d 14, 17.) After review of the record, we hold substantial evidence supports the trial court's decision that Respondents proved all the elements necessary for a prescriptive easement including the element of hostile use of the property.

10

## II.    Exclusive Easement/Adverse Possession

Appellants contend the trial court "essentially quieted title to the 7 [feet] strip of land in the [a]lley which was Appellants' [p]roperty without any satisfaction of the requirements of adverse possession." We disagree.

"There is a difference between a prescriptive use of land culminating in an easement (i.e., an incorporeal interest) and adverse possession which creates a change in title or ownership (i.e., a corporeal interest); the former deals with the use of land, the other with possession; although the elements of each are similar, the requirements of proof are materially different. [Citations.]" (*Raab v. Casper* (1975) 51 Cal.App.3d 866, 876.)

Appellants cite *Silacci v. Abramson* (1996) 45 Cal.App.4th 558 and argue the trial court's judgment granted an exclusive easement to the Respondents. Appellants, however, do not show how the trial court's judgment created an "exclusive" as opposed to a "non-exclusive" easement.

Our review of the record shows the easement at issue here is for the use of seven feet of the Appellants' property for an alley. None of the Respondents are claiming a right to possess Appellants' land. On the contrary, they simply want the use of the seven feet at the mouth of the alley on Vanalden so that automobiles can pass through the alley without having to back up to exit. The pertinent question is whether the easement was to obtain an incorporeal, as opposed to, a corporeal interest. Here, it is clear, the Respondents were seeking an incorporeal interest to use Appellants' property as an alley.

## III.   Standard of Proof

The Appellants contend the proper standard of proof in deciding a prescriptive easement case is clear and convincing and

11

that since the trial court, in its statement of decision, used the preponderance of the evidence standard, the trial court erred requiring a reversal of the judgment.  We disagree.

Currently, there is a split of opinion on the proper standard to be applied in a prescriptive easement case.  Appellants cite *Grant v. Ratliff* (2008) 164 Cal.App.4th 1304 (*Grant*) which held that the clear and convincing standard is the correct one for resolving prescriptive easement disputes.  (*Id.* at p. 1310 ["a party seeking to establish a prescriptive easement has the burden of proof by clear and convincing evidence"].)  *Vieira Enterprises, Inc. v. McCoy* (2017) 8 Cal.App.5th 1057 (*Vieira*) reviewed *Grant*'s line of authority and disagreed.  (*Id.* at p. 1074, declined to follow in *Husain v. California Pacific Bank* (2021) 61 Cal.App.5th 717 (*Husain*).)[3]

On this, *Vieira* said, "[w]e recognize that a short line of authority has stated that 'a party seeking to establish a prescriptive easement has the burden of proof by clear and convincing evidence.' (*Grant*[, *supra*,] 164 Cal.App.4th 1304, 1310 [79 Cal.Rptr.3d 902] . . . .)  *Grant* cited *Brewer v. Murphy* (2008) 161 Cal.App.4th 928, 938 [74 Cal.Rptr.3d 436], in support of this proposition, which in turn cited *Applegate v. Ota* (1983) 146 Cal.App.3d 702, 708 [194 Cal.Rptr. 331] . . . , which in turn referred generally to *Stromerson v. Averill* (1943) 22 Cal.2d 808 [141 P.2d 732] (*Stromerson*)."  (*Vieira, supra*, 8 Cal.App.5th at p. 1074.)

In analyzing *Grant*'s line of authority stemming from the *Stromerson* case, *Vieira* noted a two-fold problem – first, the

---

[3]    *Husain* recognized the split in footnote 4 but did not analyze why clear and convincing is the proper standard.

claim in *Stromerson* did not involve litigation over a prescriptive easement, but instead, dealt with a judgment quieting title on a claim of constructive fraud. (*Vieira, supra,* 8 Cal.App.5th at p. 1074.) Second, the *Vieira* court observed that the California Supreme Court, in the case, *Liodas v. Sahadi* (1977) 19 Cal.3d 278 (*Liodas*), determined that the proper standard of proof in a civil fraud case is preponderance of the evidence instead of the clear and convincing standard. (*Id.* at p. 282.)

We also have reviewed *Grant's* line of authority and reach the same conclusion. The original source for this line of authority is *Stromerson,* a case published in 1943 which applied the clear and convincing standard to a civil fraud cause of action. As pointed out in *Vieira*, *Liodas* changed the standard in civil fraud to a preponderance of the evidence. (*Liodas, supra,* 19 Cal.3d at p. 291 ["we observe that in proposing an appropriate jury instruction on the standard of proof of fraud, the editors of California Jury Instructions, Civil, recommend . . . the jury be instructed to determine all issues of fraud by the ordinary civil standard of preponderance of the evidence. [Citation.] We approve the recommendation."].) The standard used in *Stromerson* that served as the original source for *Grant*'s line of authority shifted decades ago in *Liodas*.

"Evidence Code section 115 states in pertinent part: 'Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence.' The 'law' referred to in Evidence Code section 115 is not limited to statutory law; it includes constitutional and decisional law. [Citation.] Therefore, '[t]he default standard of proof in civil cases is the preponderance of the evidence,' unless otherwise indicated by constitutional, statutory, or decisional laws.

13

[Citation.]" (*Baxter Healthcare Corp. v. Denton* (2004) 120 Cal.App.4th 333, 364-365.) As in *Vieira*, we hold the proper standard in a prescriptive easement case is the default one for civil cases as set forth in Evidence Code section 115 - preponderance of the evidence.

Assuming the trial court erred, we find no prejudice. For errors of state law, "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) "The effect of this provision is to eliminate any presumption of injury from error, and to require that the appellate court examine the evidence to determine whether the error did in fact prejudice the defendant. Thus, reversible error is a relative concept, and whether a slight or gross error is ground for reversal depends on the circumstances in each case." (6 Witkin & Epstein, Cal. Criminal Law (4th ed. 2021) Reversible Error, § 1.)

"In contrast to errors having a basis in the federal Constitution, the so-called *Watson* standard applies generally to all manner of trial errors occurring under California law, precluding reversal unless the error resulted in a miscarriage of justice. [Citation.]" (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801, fn. omitted.) "Although the *Watson* standard is most frequently applied in criminal cases, it applies in civil cases as well." (*Ibid.*) "Accordingly, errors in civil trials require that we examine 'each individual case to determine whether prejudice

14

actually occurred in light of the entire record.' [Citations.]" (*Id.* at pp. 801-802.) "[A] 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

*Conservatorship of Maria B.* (2013) 218 Cal.App.4th 514 (*Maria B.*) involved a petition by the conservator on behalf of a developmentally disabled adult conservatee to obtain a medical procedure (hysterectomy and oophorectomy) to alleviate menstrual migraines. (*Id.* at pp. 520-522.) Since the medical procedure impacted the conservatee's fundamental right to procreate, the heightened clear and convincing standard applied. However, the trial court used the preponderance standard which was error. (*Id.* at pp. 525-526.) In finding no prejudice, the court noted, "Here, [the conservatee's] counsel failed to explain how the result would have been any different if the trial court had applied the clear and convincing evidence standard of proof instead of the preponderance of the evidence standard." (*Id.* at p. 533.)

As in *Maria B.*, Appellants provide little analysis on how the outcome would have been different had the trial court used the clear and convincing standard. Appellant argues, "The trial Court in using the preponderance of the evidence standard in making its ruling, looked over the essential elements of a prescriptive easement. The trial Court made conclusory determinations of equity and law when there was substantial evidence to the contrary of hostile and adverse use of Appellants [*sic*] Property."

15

Our review of the record shows Respondents presented five witnesses[4] who testified in like manner, that: (1) they have used the alley for many years (more than five), (2) they never sought permission from the Appellants to use the alley, (3) they believed they had a right to use the alley, (4) in 2016, Appellants extended their back wall seven feet into the alley making automobile ingress/egress very difficult as cars can only enter through Tampa Avenue, and (5) they did not see a sign posted at Appellants' property.[5] To counter this evidence, Appellants both testified a sign was posted on their property to establish "permissive" use to negate the element of hostile use.

Resolving this trial, as in many cases, boiled down to a credibility contest. Determining whether a witness is credible is not dependent on the standard of proof. Be it preponderance of the evidence, clear and convincing, or beyond a reasonable doubt, the trier of fact's duty is the same – resolve whether the witness's testimony is worthy of belief. The only evidence helpful to the Appellants was flatly rejected when the trial court as the trier of fact expressly found their testimony not credible. There was no prejudice.

---

[4]     Witnesses called by the Respondents were Drew Lobenstein, Robert Alan Scott, Christopher Becker, Wyllyam Davey, and Russell O'Hearn.

[5]     As noted in section I(B) of this opinion, Scott and Davey also talked about an oral agreement by the original owners that each owner ceded seven feet of their own properties to create the alleyway.

16

**DISPOSITION**

The judgment of the trial court is affirmed.  The stay on the Writ of Supersedeas is lifted.  Respondents to recover their costs on appeal.


OHTA, J.*


We concur:



GRIMES, Acting P. J.



WILEY, J.

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17